Robban A. SICA, M.D., Plaintiff,

v.

State of CONNECTICUT, Connecticut Commissioner of Public Health, Connecticut Department of Public Health Connecticut Medical Examining Board, Stanley Peck, George Terranova MD, Pamela Nole, C. Steven Wolf, MD, Marc Bayer, MD, Defendants.

No. CIV. 3:04CV23(MRK).

United States District Court, D. Connecticut.

Aug. 23, 2004.

Jacques G. Simon, Simon & Chang, New York, NY, for Plaintiff.

Rosemary Miller McGovern, Thomas J. Ring, Tanya Feliciano, Hartford, CT, for Defendants.

*RULING ON MOTION TO DISMISS AND ON MOTION FOR AN ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY PURSUANT TO RULE 26(d)*

KRAVITZ, District Judge.

In this action, a physician, Plaintiff Robban A. Sica, M.D., seeks, among other relief, to enjoin the Defendants from pro-

ceeding with disciplinary and license revocation hearings against her that are currently scheduled before the Connecticut Medical Examining Board for October 14, 2004. In a prolix, 180–page, 714–paragraph, 16–count Amended Complaint [doc. # 29] ("Amended Compl.") that is anything but the "short and plain statement of the claim" that is required by Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiff asserts numerous claimed violations of her due process and equal protection rights under the Fourteenth Amendment, as well as numerous alleged violations of Connecticut's statutes and common law. Pursuant to a scheduling order issued by the Court on July 15, 2004 [doc. # 31] and with the parties' consent, Magistrate Judge Garfinkel will hold a hearing on Plaintiff's Motion for a Preliminary Injunction [doc. # 21] during the week of October 4, 2004.

Currently pending before the Court is Defendants' Motion to Dismiss [doc. # 39] the first, second, seventh, and eighth counts of the Amended Complaint, which are the counts of the Amended Complaint that seek injunctive relief against Defendants. Also pending before the Court is Plaintiff's Motion to Conduct Expedited Discovery [doc. # 32] in support of her motion for a preliminary injunction. The parties agreed, and the Court's scheduling order provides [doc. # 31], that if the Court grants the motion for expedited discovery, the discovery will take place between August 24, 2004 and September 14, 2004.

## I. Motion to Dismiss

While Defendants assert a number of claimed defects in Plaintiff's complaint,[1]

---

1. For example, the Court agrees with Defendants that the state agencies—the Connecticut Department of Public Health and the Connecticut Medical Examining Board—are not "persons" within the meaning of 42 U.S.C. § 1983. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 69, 117 S.Ct. 1055, 137

L.Ed.2d 170 (1997); *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998). However, other claimed defects, such as the failure of each count to state a claim for relief as a matter of law, may be too dependent upon the development of the factu-

their principal argument is that Plaintiff's injunctive requests should be dismissed on grounds of *Younger* abstention. *"Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002). Although *Younger* itself involved an ongoing state criminal proceeding, it is now well settled that its abstention doctrine applies equally to state administrative proceedings such as that involving Plaintiff. *Id.; see Kirschner v. Klemons,* 225 F.3d 227 (2d Cir.2000) (applying *Younger* to state disciplinary proceedings involving dentist).

As the Second Circuit eloquently put it in *Diamond "D", Younger* is grounded in our concern for comity toward "our co-equal sovereigns." 282 F.3d at 199–200. Furthermore,

> [t]his comity and the deference to states it often requires is the cornerstone of our federal system. We give states the first opportunity—but not the only, or last—to correct those errors of a federal constitutional dimension that infect its proceedings. We give states this opportunity to correct their own mistakes because such deference reaffirms the competence of the state courts, and thereby enhances the dignity of the state sovereign. Federal interference with state proceedings, because it necessarily presumes that state court review will be inadequate, affronts the dignity of the state sovereign.

*Id.* at 200. "Therefore, "[t]he defining" feature of *Younger* abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." *Kirschner,* 225 F.3d at 236.

■] *Younger* abstention applies when three factors are present: (1) there is an ongoing state proceeding; (2) the claim raises important state interests; and (3) the state proceedings provide an adequate opportunity to raise the federal constitutional claims. *See Schlagler v. Phillips,* 166 F.3d 439, 441 (2d Cir.1999). If *Younger* applies, "abstention is mandatory." *Id.* at 441; *see Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

There is little doubt that these three factors are present in this case. Unquestionably, there are ongoing state administrative proceedings pending against Plaintiff. Indeed, it is the pendency of those proceedings that brings Plaintiff to this Court. Furthermore, those proceedings, and Plaintiff's claims in this case, implicate important state interests. The licensing and discipline of physicians practicing within the state raise issues of paramount state concern. *See Kirschner,* 225 F.3d at 234. Plaintiff does not seriously contend otherwise. Moreover, even a cursory review of Plaintiff's own claims reveals that they are founded, in large measure, on asserted violations of state law, issues that are uniquely suited to resolution in state court. *See, e.g.,* Amended Compl. [doc.

---

al record to be dismissed at this stage. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In any event, if the Court agrees with Defendants' *Younger* arguments, it may not be necessary to reach the other grounds for dismissal asserted by Defendants. Therefore, the Court will reserve a ruling on the other grounds for dismissal sought by Defendants until completion of Magistrate Judge Garfinkel's ruling on the preliminary injunction and the evidentiary findings regarding *Younger* abstention that are discussed *infra.*

# 29] ¶ 44 (defendants violated "Plaintiff's due process rights safeguarded by ... Conn. Gen.Stat. §§ 19a–9, 19a–14(a)(4), 19a–19 and 20–13b"); ¶ 106 (defendants lack jurisdiction under Conn. Gen.Stat. § 19a–19 to investigate the New York matters); ¶ 109 (there are no provisions of Connecticut law which authorize Defendants to act); ¶ 148 (administrative subpoenas issued by Defendants were "in direct violation of Conn. Gen.Stat. § 19a–19"); ¶ 239 (the Board's opinion and holding do not "compl[y] with the requirements of Conn. Gen.Stat. § 4–180a"); ¶ 294 ("That is not what the Connecticut legislature intended when it enacted Conn. Gen. Stat., Chapter 54, as well as Conn. Gen. Stat., Chapters 368a and 370"); ¶ 317 ("Regulation 19a–9–17 is in direct violation of Conn. Gen.Stat. § 4–167(a)(1)."); ¶ 323 ("The Commissioner, his employees, servants and assigns miserably failed to ensure strict compliance with the mandate of Conn. Gen.Stat. § 167(a)(1)."). Indeed, large portions of the parties' briefs before this Court are devoted to state law—to the Defendants' jurisdiction and powers under state law and whether they have exercised that jurisdiction and those powers in this case in conformity with state law. *See, e.g.,* Defendants' Memorandum in Support of Motion to Dismiss [doc. # 40] at 23–35; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion Seeking to Dismiss [doc. # 43] at 23–26, 33–39. It is readily apparent, therefore, that Connecticut courts have a substantial interest in resolving the myriad issues raised by the licensing and disciplinary proceedings involving Plaintiff.

Finally, notwithstanding Plaintiff's unfounded protestations to the contrary, the state proceedings will provide Plaintiff with an adequate opportunity to raise her federal constitutional claims. *See Moran v. Connecticut Dep't of Public Health and Addiction Serv.,* 954 F.Supp. 484, 487 (D.Conn.1997) (in abstaining on the basis of *Younger* from interfering with an ongoing disciplinary proceeding regarding a Connecticut physician, the court concluded that "[p]arties are not precluded from raising federal concerns in administrative hearings [involving discipline of a physician]"). "[F]ederal statutory and constitutional claims may be raised in state-court judicial review of administrative proceedings." *Id.* (citation omitted); *see also Rayhall v. Akim Co., Inc.,* 263 Conn. 328, 337–38, 819 A.2d 803 (2003).

■ Therefore, this Court must abstain from interfering with the ongoing state disciplinary proceedings involving Plaintiff unless an exception to *Younger* abstention applies. *See, e.g., Kirschner,* 225 F.3d at 236–37. As the Second Circuit discussed at some length in *Diamond "D",* there are only two "tightly defined exceptions to the *Younger* abstention doctrine." *Diamond "D",* 282 F.3d at 197. They are the "bad faith" exception and the "extraordinary circumstances" exceptions. As the Supreme Court has emphasized, these exceptions provide only a "very narrow gate for federal intervention in pending state [ ] proceedings." *Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Indeed, since *Younger,* no decision of the U.S. Supreme Court has found the bad faith or extraordinary circumstances exception applicable. *See* 17A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice And Procedure § 4255, at 254–59 (2d ed.1988).

The Second Circuit in *Diamond "D"* explained the proof necessary to invoke the bad faith exception as follows:

[F]or a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome... Our most recent cases concerning the bad faith exception have further emphasized that the subjective

motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry. A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—*even when the violations of constitutional rights are egregious*—will not warrant the application of the bad faith exception. To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive.

*Diamond "D"*, 282 F.3d at 199 (emphasis added) (internal quotations and citations omitted).

The Supreme Court has described the "extraordinary circumstances" exception in the following terms:

Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state [ ] process. The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state [ ] proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

*Kugler*, 421 U.S. at 124–25, 95 S.Ct. 1524. In *Diamond "D"*, the Second Circuit noted that the Supreme Court has provided only two examples of circumstances that would meet the high standard implicit in the phrase "extraordinary circumstances." "[F]irst, when a state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Diamond "D"*, 282 F.3d at 201 (quoting *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)) (internal quotations omitted). Second, "when the state administrative agency 'was incompetent by reason of bias to adjudicate issues pending before it.'" *Diamond "D"*, 282 F.3d at 201 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)).

■] A plaintiff seeking to invoke either the bad faith or extraordinary circumstances exceptions may not rely on conclusory allegations in a complaint or affidavit but must instead "affirmatively demonstrate the justification for application of an exception." *Kirschner*, 225 F.3d at 236; *see Saunders v. Flanagan*, 62 F.Supp.2d 629, 634 (D.Conn.1999); *Hirschfeld v. New York*, No. 97 Civ. 6059(MBM), 1997 WL 605115, at *2 (S.D.N.Y. Sept.30, 1997).[2] Based upon the submissions to date, the Court has serious concerns whether Plaintiff can satisfy the rigorous requirements of the bad faith or extraordinary circumstances exceptions. *See, e.g., Diamond "D"*, 282 F.3d at 200–01 (finding no bad faith or extraordinary circumstances); *Kirschner*, 225 F.3d at 236–37 (same); *Schlagler*, 166 F.3d at 444 (same).

2. Plaintiff suggests in her brief that because the *Younger* issue has been raised on a motion to dismiss, the Court must accept accept her allegations as true and may not resolve factual issues. Plaintiff is wrong. As the cases cited in the text show, when *Younger* issues are raised on a motion to dismiss, a plaintiff may not rely on the conclusory allegations of her complaint but instead must come forth with specific evidence affirmatively demonstrating the applicability of the *Younger* exceptions and justifying the extraordinary remedy of federal court interference with ongoing state proceedings.

Nevertheless, the Second Circuit has indicated that when a plaintiff seeks to avail herself of the *Younger* exceptions, a district court ordinarily should hold an evidentiary hearing. *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir.2003). This is because issues such as subjective bad faith and bias—both of which are asserted in this case—are questions of fact that are often difficult to resolve without an evidentiary hearing. That does not mean that an evidentiary hearing is always required when *Younger* issues are raised. *See Didden v. Port Chester*, 304 F.Supp.2d 548, 567 (S.D.N.Y. 2004); *Saunders*, 62 F.Supp.2d at 634; *Hirschfeld*, 1997 WL 605115, at *2. However, here, as in *Kern*, Plaintiff has made numerous assertions of subjective bad faith and bias, and Plaintiff seeks a preliminary injunction, which usually requires an evidentiary hearing when factual issues are in dispute. *Kern*, 331 F.3d at 11; *Commodity Futures Trading Comm'n v. Incomco, Inc.*, 649 F.2d 128, 131 (2d Cir. 1981) ("It is settled law in this Circuit that motions for preliminary injunctions should not be decided on the basis of affidavits when disputed issues of fact exist.").

Therefore, the Court will not resolve the question whether Plaintiff has made a sufficient showing that the bad faith and extraordinary circumstances exceptions to *Younger* abstention apply in this case without first holding an evidentiary hearing on those issues. These issues can and should be aired at the upcoming preliminary injunction hearing before Magistrate Judge Garfinkel, who will hold an evidentiary hearing and can make factual findings regarding the bad faith and extraordinary circumstances exceptions. That is precisely how the district court proceeded on remand from the Second Circuit in *Kern*. *See Kern v. Clark*, No. 01 CV 450S, 2004 WL 941418, at *2 (W.D.N.Y. Apr.9, 2004).

## II. Motion For Expedited Discovery

Plaintiff has moved pursuant to Rule 26(d) of the Federal Rules of Civil Procedure for expedited discovery regarding the issues that will arise at the preliminary injunction hearing. *See* Motion for Expedited Discovery [doc. # 32]. It is this Court's ordinary practice to permit limited and reciprocal expedited discovery in connection with preliminary injunction hearings. However, several aspects of Plaintiff's request cause the Court great concern.

First, Plaintiff has not sought *limited* discovery. To the contrary, consistent with Plaintiff's counsel's approach to drafting complaints (here, the Amended Complaint is a whopping 180 pages in length), Plaintiff's counsel has sought extensive discovery from numerous individuals. For example, in the brief window of time available for discovery in connection with the preliminary injunction hearing, Plaintiff wants every one of the 14 defendants to respond to 101 proposed interrogatories and 71 proposed document requests, and wants to take the depositions of at least 10 individuals, one of whom (David Tilles) Plaintiff seeks to depose for 3 days. Moreover, on their face, Plaintiff's discovery requests are not limited to the issues and counts that are the subject of the preliminary injunction hearing.

Second, Plaintiff's proposed discovery requests violate the Court's Local Rules and the Federal Rules of Civil Procedure. The proposed discovery requests attach a standard set of definitions that apparently come from the District of New Jersey and that do not conform with the standard definitions adopted in this District. *See* D. Conn. L.R. 26(c). There also has been no adequate showing made for exceeding the number of interrogatories or the limits on depositions provided in the Federal Rules. *See* Fed.R.Civ.P. 30(d)(2) (depositions lim-

ited to one day of seven hours); Fed. R.Civ.P. 33 (limiting the number of interrogatories to 25).[3]

█] Third, the concerns for the dignity of "our co-equal sovereigns" that animate *Younger* abstention, *Diamond "D"*, 282 F.3d at 200, counsel great caution in allowing a party facing state disciplinary and licensing proceedings to subject agency heads, investigators, and decisionmakers to cross-examination while a state proceeding is pending against the plaintiff and before the state body has made its decision. Defendants also rightly note the general rule prohibiting inquiry into the mental processes of agency members. *See, e.g., Gottlieb v. Pena*, 41 F.3d 730, 737 (D.C.Cir.1994) ("[P]arties have no right to inquire into an agency's mental processes."); *Feller v. Board of Educ.*, 583 F.Supp. 1526, 1528 (D.Conn.1984) ("Generally, it is inappropriate to probe the mental processes of an agency's members absent a strong showing of bad faith or improper behavior."). The Court is cognizant of the fact that the potential for abuse and harassment is quite high in the circumstances of this case, and Plaintiff's overly broad proposed discovery requests have only served to heighten the Court's concerns. That said, the Court believes that Plaintiff should be able to conduct limited discovery in an effort to buttress her claims that the *Younger* exceptions apply and that she is entitled to the preliminary injunction which she seeks.

Balancing these interests in the context of this case, therefore, the Court concludes that Plaintiff is entitled to *limited* expedited discovery as follows:

1. Any discovery Plaintiff undertakes must be focused solely on the issues raised in the first, second, seventh, and eighth counts of the Amended Complaint, the only counts that are relevant to the preliminary injunction, and on her claims of bad faith and bias within the meaning of the *Younger* exceptions. Since the bad faith and extraordinary circumstances exceptions expressly contemplate a showing of subjective motivation, bad faith, and bias, Plaintiff will be permitted to make limited and non-abusive inquiry into the Defendants' subjective motivations and bias. However, any discovery sought must comply with the Federal Rules of Civil Procedure and with the District of Connecticut's Local Rules.

2. Plaintiff will not be permitted to question, through depositions, interrogatories, or otherwise, members of the Connecticut Medical Examining Board and specifically will not be permitted to question those panel members who have been assigned the task of conducting the hearing in Plaintiff's case. If this Court decides to abstain, it would be an affront to this state agency to have subjected Board members to cross-examination on issues that they will shortly be called upon to decide at the upcoming hearing. Absent some substantial and concrete showing of actual and extant bias by these decision makers—and to date that Court has not been presented with any—the Court will not risk subjecting these individuals to the potential abuse and harassment that Plaintiff's proposed discovery would entail.

3. Plaintiff may serve a total of no more than 10 document requests (including sub-parts) on other Defendants. That does not mean that Plaintiff can serve 10 document requests on each Defendant. To

---

**3.** The Court notes that in her reply brief, Plaintiff has rightly acknowledged the need to rewrite her requests to conform to local and federal rules, the need to limit her discovery to the issues relevant to the injunction hearing, and the need not to seek information that is protected by the attorney-client privilege. *See* Plaintiff's Reply Memorandum Regarding Her Motion For Expedited Discovery [doc. # 44].

 

the contrary, the Court is limiting Plaintiff to a total of 10 document requests on all Defendants and all others. Plaintiff must serve the document requests no later than **August 26, 2004**, and they shall be responded to no later than **September 14, 2004**.

4. Plaintiff shall be permitted to take no more than a total of 3 depositions, none of which shall extend beyond a seven-hour day.

5. While Defendants have not sought permission to take discovery, the Court concludes that if Defendants wish to take discovery on the issues relevant to the preliminary injunction hearing, Defendants will be entitled to take the deposition of the Plaintiff (for no more than one seven-hour day) and serve a total of no more than 5 document requests on Plaintiff.

6. Any discovery disputes relating to the preliminary injunction should be brought to the attention of Magistrate Judge Garfinkel.

### III. Conclusion

For the foregoing reasons, the Court reserves ruling on Defendants' Motion to Dismiss [# 39] and refers the *Younger* abstention issues to Magistrate Judge Garfinkel for an evidentiary hearing and fact finding, which shall occur at the same time as the hearing on Plaintiff's preliminary injunction request. The parties have already filed consents to Magistrate Judge Garfinkel holding the preliminary injunction hearing, and they shall also file within one week of this ruling consents to Magistrate Judge Garfinkel holding an evidentiary hearing on the *Younger* exceptions and making factual findings regarding those exceptions.

Finally, the Court DENIES IN PART Plaintiff's Motion for Expedited Discovery [doc. # 39] and grants the limited discovery set forth above.

IT IS SO ORDERED.